THE ALBERTS FIRM, APC
Houston M. Watson, Esq. (SBN 163703)
1901 East Fourth Street, Ste. 150
Santa Ana, CA 927056
Office: (714) 581-8838
Fax: (714) 581-8836
Email: hwatson@albertsfirm.com

Attorneys for Defendants
John Franco Watmore, Florian Antonietta Losapio,
and FLS and Associates, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTER HOMES REALTY, INC., | Case No. 16-cv-01607-BEN-MDD |
| Plaintiff, | *Honorable Roger T. Benitez, District Court Judge, Courtroom 5A* |
| v. | |
| JOHN FRANCO WATMORE, FLORIAN ANTONIETTA LOSAPIO, FLS AND ASSOCIATES, INC., AND DOES 1TO 25, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FEDERAL RULES OF PROCEDURE RULE 12(B)(6).** |
| Defendants. | |
| | Date: October 24, 2016 |
| | Time: 10:30 a.m. |
| | Courtroom: 5A |
| | *[REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH]* |
| | **PER CHAMBERS, NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

1

# TABLE OF CONTENTS

I.   INTRODUCTION AND FACTUAL BACKGROUND ...............................................2

II.  LEGAL STANDARD FOR RULE 12(B) (6) MOTIONS..........................................6

III.   ARGUMENT.............................................................................................................8

  A.   BHR Has Clearly Failed To State A Claim Against The Individual Defendants
  Losapio and Watmore. ..............................................................................................8

  B.        BHR Has Clearly Failed To State A Claim Against Defendant FLS.......................9

    1.   There is No Federal Trademark Infringement As There Is No Likelihood of
    Confusion................................................................................................................9

    2.   There is No Common Law Trademark Infringement As There Is No Likelihood
    of Confusion. ........................................................................................................14

    3.   BHR's California Business Tort Claims Likewise Fail........................................14

      a. The Third Claim Fails To Plead A Violation Of Business & Professions Code
      Section 17200 et seq. .........................................................................................14

      b. Claim 3, For Common Law Unfair Competition, Fails For The Same Reasons
      BHR's Trademark Claims Fail ...........................................................................15

      c. The Fifth Claim Fails Once Again Because There is No Likelihood of
      Confusion. ..........................................................................................................15

  C.   FLS Is the Superior User in The Relevant Market and Through Its Continued Use
  Has Established Secondary Meaning Worth of Protection.......................................15

IV. CONCLUSION.........................................................................................................17

i

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>

3

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ............................................12

4

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 ............7

5

*Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ........................................................8

6

*Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036 (9th Cir. 1999)

7

  ..............................................................................................................................12

8

*Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996) ..............................6

9

*Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996) ..........................................................8

10

*Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)........................................16

11

Eclipse Assocs. Ltd. v. Data Gen. Corp., 894 F.2d 1114, 1116 n. 1 (9th Cir.1990) .........18

12

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002) .......................18

13

*Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1150 (9th

14

  Cir. 1992) ...............................................................................................................9

15

*JL Beverage Company, LLC v. Jim Beam Brands Co.*, 2016 WL 3770484 (9th Cir. 2016)

16

  ..............................................................................................................................18

17

*Jockey  Club, Inc.  v. Jockey Club of Las Vegas,* 595 F.2d 1167 (9th Cir.1979) ..............10

18

*Kendall Jackson Winery v. E.J. Gallo Winery,* 150 F .3d 1042, 1046 (9th Cir. 1998) .....15

19

*Meta–Film Assocs., Inc. v. MCA, Inc.,* 586 F. Supp. 1346, 1362 (C.D. Cal. 1984)..........16

20

*Mir, M.D. v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988) ...................8

21

*Miss World (UK), Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445 (9th Cir. 1988) ..17

22

*Murray v. Cable NBC,* 86 F.3d 858, 860 (9th Cir.  1996) ...................................................8

23

*Murray v. Cable NBC, 86* F.3d 858, 860 (9th Cir. 1996)................................................10

24

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137 (9th Cir.

25

  2011) ....................................................................................................................11

26

*New W e s t Corp.  v. NYM  Co. of  California, Inc.,* 595  F.2d  1194,  1201-1202  (9th

27

  Cir. 1979)..............................................................................................................10

28

*Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)................7

*Sebastian Int'l, Inc. v. Russolio,* 186 F. Supp.2d 1055, 1069 (C.D. Cal. 2000) ...............15

*Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) ............................6

*Toho Co. v. Sears, Roebuck & Co.,* 645 F.2d 788, 790-791 (9th Cir. 1981).................8, 11

*Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992)....................................17

## **Statutes**

15 U.S.C. § 1114 ................................................................................................................9

15 U.S.C. §1125 .................................................................................................................9

Cal. Bus. & Prof. Code § 17200 ...................................................................................9, 14

## **Rules**

Fed. R. Civ. Proc. 12(b)(6) ...............................................................................................2

Fed. R. Civ. Proc. 8(a)(2)...................................................................................................8

Fed. R. Evid. 201 ...............................................................................................................8

iii

## I.     INTRODUCTION AND FACTUAL BACKGROUND

Defendants FLS & Associates, Inc. ("FLS"), Florian Antonietta Losapio ("Losapio") and John Franco Watmore "Watmore"), by and through their undersigned counsel, respectfully submit that this dispute and all claims brought by the Plaintiff BHR, Inc. must be dismissed pursuant to Federal Rule of Procedure 12(b)(6) for the failure to state a claim against any and all of the Defendants.

Defendant FLS provides real estate brokerage services for **ONE**, and only one, market; the San Diego market. It has done so since 1999 under the trade names "San Diego Better Homes Realty" and "San Diego Better Homes". FLS markets its services almost exclusively through its website www.sandiegobetterhomes; neither of the individual Defendants, Losapio or Watmore, own any of these marks or tradenames.[1] Plaintiff BHR, on the other hand, with **over 80 offices throughout the United States**, provides similar real estate brokerage services (as well as additional ones); but unlike FLS, does so through franchised offices.[2]  Accordingly to its website, BHR, a Nevada corporation, did not expand outside of Nevada until 2008[3]. Accordingly, that means that FLS began its San Diego operations **at least 9 years** before BHR went outside of the Nevada state lines, **and for purposes of this Motion FLS is the senior user in the relevant marketplace (San Diego) and by its continued use and advertising has acquired secondary meaning in the San Diego market.** ***More pertinent to this action is that fact that BHR does not even utilize the word mark and logo at issue (U.S. Trademark Registration Nos. 1509510 and 1344964 respectively (which BHR never***

---

[1] See Request for Judicial Notice (Document #s 1 through 7 inclusive) filed concurrently herewith. As indicated by the County of San Diego fictitious business name filings and screenshots from the same showing "No search results found", it is clear that neither of the individual defendants Florian Antonietta Losapio or John Franco Watmore own any of the alleged infringing marks. Accordingly, this Court is respectfully requested to dismiss them with prejudice for the failure to state a claim against either of them.

[2] See Complaint at ¶9 and Request for Judicial Notice (Document #s 15 and 17) filed concurrently herewith.

[3] See Complaint at ¶5 and Request for Judicial Notice (Document # 16) filed concurrently herewith wherein BHR describes its operations as follows: "Better Homes Realty has been serving its clients since we were established in 1964. **By 1975, Better Homes offices were opening all throughout the state and since 2008 throughout the country.**  (Emphasis added).

1 | *even attaches to its Complaint) in San Diego. Rather, in San Diego, BHR operates as*
2 | *"BHR San Diego"*[4]*.*  It is also important to note that although BHR claims protection for
3 | the trade name "Better Homes", it neither pleads nor holds a federal trademark
4 | registration for "Better Homes".

5 | Additionally, internet searches for "better homes", "Better Homes Realty" and/or
6 | "better homes realty" (of which this Court may take judicial notice) do not include any
7 | "hits" for the FLS marks "San Diego Better Homes Realty", "San Diego Better Homes"
8 | or "sandiegobetterhomes.com"; **but do include hits for BHR**.[5] **Thus a consumer**
9 | **seeking to buy or sell real estate in San Diego will never see the BHR and FLS**
10 | **marks at the same time and on the same screen!** Finally, the pleadings as well as other
11 | matters that may be considered by this Court clearly indicate that no consumer would
12 | likely be confused between the companies after reviewing their respective websites. For
13 | these and other reasons, the Complaint must be dismissed with prejudice.

14 | **The federally registered BHR marks**[6] **at issue (**_**and which are both subject to**_
15 | _**concurrent use agreements allowing others to use the same marks**_**)** are:

# Typed Drawing

| **Word Mark** | **BETTER HOMES REALTY** |
|---|---|
| **Goods and Services** | IC 035. US 101. G & S: RENDERING TECHNICAL AID AND ASSISTANCE FOR THE ESTABLISHMENT AND OPERATION OF REAL ESTATE BROKERAGE SERVICES. FIRST USE: 19720102. FIRST USE IN COMMERCE: 19720102 <br><br> IC 036. US 102. G & S: REAL ESTATE BROKERAGE SERVICES. FIRST USE: 19640501. FIRST USE IN COMMERCE: 19640501 |
| **Mark Drawing Code** | (1) TYPED DRAWING |

---

[4] See Request for Judicial Notice (Document # 15) filed concurrently herewith.
[5] See Request for Judicial Notice (Document #s 9-11 inclusive) filed concurrently herewith.
[6] The word mark "Better Homes Realty", Registration Number 1509510 is currently shown on the USPTO website as being owned by Avalar Network, Inc. Request for Judicial Notice Doc # 24. Accordingly, Plaintiff BHR, who has alleged no assignment or other transfer of said mark, has no standing to bring any claim with respect to the word mark "Better Homes Realty". This is a separate and independent ground for dismissal.

3

| | |
|---|---|
| **Serial Number** | 73460626 |
| **Filing Date** | January 12, 1984 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | June 11, 1985 |
| **Registration Number** | 1509510 |
| **Registration Date** | October 18, 1988 |
| **Owner** | (REGISTRANT) BETHOM CORPORATION CORPORATION CALIFORNIA SUITE A202 675 YGNACIO VALLEY ROAD WALNUT CREEK CALIFORNIA 94596 |
| | (LAST LISTED OWNER) AVALAR NETWORK, INC. CORPORATION NEVADA 6430 MEDICAL CENTER STREET LAS VEGAS NEVADA 89148 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Hae Park-Suk |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "REALTY" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL-2(F) |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20081117. |
| **Renewal** | 1ST RENEWAL 20081117 |
| **Other Data** | SUBJECT TO CONCURRENT USE PROCEEDING NO. 674 WITH BETTER HOMES REALTY, INC., 6045 WILSON BOULEVARD, ARLINGTON, VA 22205. APPLICANT CLAIMS EXCLUSIVE RIGHT TO USE THE MARK IN THE AREA COMPRISING THE ENTIRE UNITED STATES EXCEPT FOR WASHINGTON D.C., THE STATES OF VIRGINIA, MARYLAND, DELAWARE, PENNSYLVANIA, WEST VIRGINIA, KENTUCKY, TENNESSEE, NORTH CAROLINA, AND THE AREA OF NEW JERSEY SOUTH OF HIGHWAY 195. |
| **Live/Dead** | LIVE |

4

**Indicator**



| | |
|---|---|
| **Word Mark** | **BETTER HOMES REALTY** |
| **Goods and Services** | IC 035. US 101. G & S: RENDERING TECHNICAL AID AND ASSISTANCE FOR THE ESTABLISHMENT AND OPERATION OF REAL ESTATE BROKERAGE SERVICES. FIRST USE: 19720102. FIRST USE IN COMMERCE: 19720102

IC 036. US 100 102. G & S: REAL ESTATE BROKERAGE SERVICES. FIRST USE: 19640501. FIRST USE IN COMMERCE: 19640501 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 24.01.03 - Shields or crests with letters, punctuation or inscriptions contained therein or superimposed thereon
26.11.21 - Rectangles that are completely or partially shaded |
| **Serial Number** | 73460627 |
| **Filing Date** | January 12, 1984 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 9, 1985 |
| **Registration Number** | 1344964 |
| **Registration Date** | June 25, 1985 |
| **Owner** | (REGISTRANT) BETHOM CORPORATION CORPORATION CALIFORNIA 675 YGNACIO VALLEY ROAD, SUITE A202 WALNUT CREEK CALIFORNIA 94596

(LAST LISTED OWNER) BETTER HOMES REALTY, INC. |

5

| | |
|---|---|
| | CORPORATION NEVADA P.O. BOX 82010 LAS VEGAS NEVADA 89180 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Hae Park-Suk |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "REALTY" APART FROM THE MARK AS SHOWN |
| **Description of Mark** | THE DRAWING IS LINED FOR THE COLORS RED AND BLUE. |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL-2(F) |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20160304. |
| **Renewal** | 2ND RENEWAL 20160304 |
| **Other Data** | APPLICANT CLAIMS EXCLUSIVE RIGHT TO USE THE MARK FOR THE ENTIRE UNITED STATES OF AMERICA EXCEPT FOR WASHINGTON, D.C.; THE STATES OF VIRGINIA, MARYLAND, DELAWARE, PENNSYLVANIA, WEST VIRGINIA, KENTUCKY, TENNESSEE AND NORTH CAROLINA; AND SOUTHERN NEW JERSEY. |
| **Live/Dead Indicator** | LIVE |

## II.    LEGAL STANDARD FOR RULE 12(B) (6) MOTIONS

Under Rule 12(b) (6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim on which relief may be granted. On such a motion, a court must accept well-pleaded factual allegations as true, *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996), but not those that are unwarranted deductions of fact based on unreasonable inferences or conclusory statements. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). As the Court held in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A

pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, 127 S.Ct. 1955. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted). Finally, "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 555, 557). In short, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950.

Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 150. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In making such a determination, a court may consider exhibits submitted with the complaint. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). Also, a court may consider documents which are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id*. at 454. Further, it is proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *Mir, M.D. v. Little Co. of Mary Hospital*, 844

F.2d 646, 649 (9th Cir. 1988). In the context of a 12(b)(6) motion concerning an alleged trademark infringement, the pleadings and other matters that the Court can consider show that confusion is unlikely, the claim should be dismissed. *See Murray v. Cable NBC,* 86 F.3d 858, 860 (9th Cir. 1996) (citing *Toho Co. v. Sears, Roebuck & Co.,* 645 F.2d 788, 790-791 (9th Cir. 1981)). That is the case before this Court. Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment. *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996). In this case, it is clear by the pleadings as well as other matters that may be considered by this Court that this case cannot be saved by any possible amendment and must be dismissed with prejudice.

## III.    ARGUMENT

### A.    BHR Has Clearly Failed To State A Claim Against The Individual Defendants Losapio and Watmore.

BHR asserts 5 separate claims against individual Defendants Florian Antonietta Losapio and John Franco Watmore (collectively the "Individual Defendants" or individually as an "Individual Defendant") all based upon its **belief** that they were doing business as "sandiegobetterhomes.com", "San Diego Better Homes" and/or "San Diego Better Homes Realty" See Complaint at ¶6. However, as is clearly indicated by RJN Document #s 1 through 7 inclusive: (1) "sandeigobetterhomes.com' was registered by Defendant FLS with the County of San Diego on or about May 27, 2009; (2) "San Diego Better Homes Realty" was registered by Defendant FLS with the County of San Diego on September 21, 2012 and again on August 21, 2013; (3) there are no search results for a fictitious business filing with the name "San Diego Better Homes"; (4) there are no search results for a fictitious business filing owned by either of the Individual Defendants. Accordingly, these documents clearly rebut any claims against these Individual Defendants. Finally, the allegations in the Complaint entirely fail to differentiate between the Defendants; grouping them together without any allegation that one was the agent of the others. *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1150 (9th Cir. 1992). Accordingly, there are absolutely no facts pled

which would entitle BHR to damages against either Individual Defendant. Nor can the same be saved by amendment. Instead any liability would be limited to the corporate Defendant FLS. However, for the reasons set forth below, all 5 claims still fail against FLS.

**B.    BHR Has Clearly Failed To State A Claim Against Defendant FLS**

BHR has alleged 5 separate claims against Defendant FLS for (1) Trademark Infringement under Section 32 of the Lanham Act (15 U.S.C. Section 1114); (2) Unfair Competition and False Designation of Origin under Section 43 of the Lanham Act (15 U.S.C. Section 1125); Unfair Competition Under California Business & Professions Code Section 17200; (4) Common Law Unfair Competition; and (5) Common Law Injury to Business Reputation. The only difference between the 2 Lanham Act claims is that the First Claim requires federal registration and whereas the Second Claim does not. Both claims are based upon an allegation of likelihood of confusion, mistake or confusion[7]. The remaining three claims are predicated on the same allegations and require a finding of liability under either First or Second Claims.

**1.   There is No Federal Trademark Infringement As There Is No Likelihood of Confusion.**

Section 32(1)(a) and (b) create liability for use of any reproduction, counterfeit, copy, or colorable imitation" of a registered mark that is likely to cause confusion. To state a claim for infringement of the "Better Homes Realty" marks, BHR must allege that FLS's use of the terms "sandiegobetterhomes", "San Diego Better Homes" and/or "San Diego Better Homes Realty" is likely to cause confusion or mistake as to the origin of the services. *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201-1202 (9th Cir. 1979); *see also Jockey Club, Inc. v. Jockey Club of Las Vegas,* 595 F.2d 1167 (9th Cir.1979). If the pleadings as well as other matters that may be considered by the Court show that confusion is unlikely, the claim should be

---

[7] See Complaint at ¶¶13, 18 and 25.

dismissed. *See Murray v. Cable NBC,* 86 F.3d 858, 860 (9th Cir. 1996) (citing *Toho Co. v. Sears, Roebuck & Co.,* 645 F.2d 788, 790-791 (9th Cir. 1981)).

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011) provides an excellent examination that is illustrative of the process that this Court must take in making its determination of a likelihood of confusion between the BHR marks and FSL's advertising materials.

The *Network Automation* case involved two direct competitors selling job scheduling and management software via the Internet. The trademark owner, Advanced Systems Concepts, Inc., sold its software under the registered trademark "ActiveBatch." The plaintiff, Network Automation, Inc., purchased the keyword "ActiveBatch" from the Google and Bing search engines. As a result, Internet searches using the word "ActiveBatch" returned results that included Network Automation's Web site. When Advanced Systems sent Network Automation cease and desist letters, Network Automation filed a declaratory judgment action seeking a ruling that its use of ActiveBatch as a keyword did not constitute trademark infringement. Advanced Systems responded by moving for a preliminary injunction.

The legal dispute centered on whether Network Automation's use of the ActiveBatch keyword caused initial interest confusion, a form of trademark infringement commonly alleged in the Internet context. The Ninth Circuit described initial interest confusion as occurring "when the defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is completed as a result of the confusion." *Network Automation* at 1144.

The district court held that there was a likelihood of initial interest confusion, reasoning that the following three factors weighed in the trademark owner's favor: 1) the similarity of the marks; 2) the relatedness of the goods; and 3) the marketing channels used. Those three factors were emphasized by the Ninth Circuit in *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036 (9th Cir. 1999), a seminal case regarding Internet trademark infringement, and have come to be known as the

"Internet troika." The district court also found that confusion was likely because, in its view, "there is generally a low degree of care exercised by Internet consumers." *Network Automation* at 1152.

The Ninth Circuit reversed the district court's ruling and went out of its way to emphasize that courts must avoid rigid formulas and assumptions "when applying the law in the Internet context." "Emerging technologies," said the court, "require a flexible approach." *Network Automation* at 1142. The Ninth Circuit reminded courts that **"the *sine qua non* of trademark infringement is consumer confusion,"** and the factors relevant to assessing the likelihood of confusion may vary with the context. **(Emphasis added)** The Court also emphasized that just because a consumer is diverted to a competing Web site does not mean that consumer is confused. *Network Automation* at 1149.

The Ninth Circuit reaffirmed that the starting point for trademark infringement analysis in that jurisdiction is the eight factors it identified in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979): 1) strength of the mark; 2) proximity of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) types of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines. Those factors, however, are not exclusive and the weight given to each may vary with the context. In particular, the Court deemphasized the importance of the "marketing channels used" factor in the Internet context because "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation* at 1151.

The Court instead placed emphasis on two considerations: the growing sophistication of Internet users and whether allegedly infringing Internet search results were labeled in a manner that might reduce the likelihood of confusion. The Court noted "that the default degree of consumer care is becoming more heightened as the novelty of

the Internet evaporates and online commerce becomes commonplace." Experienced Internet users, said the Court, "fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary." *Network Automation* at 1152-53. That experience and sophistication have also now had 5 more years to increase since the *Network Automation* decision.

The Court's emphasis on the sophistication of Internet consumers and labeling of Internet search results colored its analysis of the eight *Sleekcraft* factors. For example, the Court explained that when consumers use a mark as a keyword, the "strength of the mark" analysis must consider whether the consumers are so knowledgeable about the source associated with the mark that they are unlikely to be confused by competing Internet search results. Similarly, the court stated that the "proximity of the goods" factor "must be considered in conjunction with the labeling and appearance of the advertisements and the degree of care exercised by the consumers." *Network Automation* at 1150.

In the Ninth Circuit's view, how Internet search results are labeled or otherwise depicted onscreen is particularly important in the keyword advertising context, because the "likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context." *Network Automation* at 1153.  For example, results that are confusingly labeled or not labeled at all may be likely to cause confusion. On the other hand, in this case, the Ninth Circuit suggested that the district court should have considered that the keyword search results appeared in a separate section of the screen labeled "sponsored links," which may have reduced the likelihood of confusion. **It is also important to note that the *Network Automation* Court took judicial notice of the actual screenshots at issue in making its determination and could have not made the same without them.**

Using the same analysis in this case, this Court must dismiss all of the claims brought by BHR. As is shown by RJN Doc #s 20 through 23 inclusive, FLS operates in ONE, and only one, market; the San Diego market. It has done so since 1999 under

advertising its services as "San Diego Better Homes Realty" and "San Diego Better Homes" and markets its services almost exclusively through its website "www.sandiegobetterhomes".[8] BHR, on the other hand, has **over 80 offices throughout the United States** and provides similar real estate brokerage services (as well as additional ones); but unlike FLS, does so through franchised offices.[9]  Accordingly to its website, BHR, a Nevada corporation, did not expand outside of Nevada until 2008[10]. That means that FLS began its San Diego operations **at least 9 years** before BHR went outside of the Nevada state lines, **and for purposes of this Motion is the senior user in the relevant marketplace (San Diego) and by its continued use has acquired secondary meaning in the San Diego market**. More pertinent to this action is that fact that BHR does not even utilize the word mark and logo at issue (U.S. Trademark Registration Nos. 1509510 and 1344964 respectively) in San Diego; rather, in San Diego, BHR operates as "BHR San Diego"[11].

Finally, internet searches for "better homes" and/or "better homes realty" do not include any "hits" for the FLS marks "San Diego Better Homes Realty", "San Diego Better Homes" or "sandiegobetterhomes.com"; **but do include hits for BHR**.[12] **Thus a consumer seeking to buy or sell real estate in San Diego will never see the FLS and BHR marks at the same time and on the same screen!** Rather, a consumer has to know the name of the website to actually find FLS! Accordingly as a matter of law there can be no likelihood of confusion and the Court must dismiss this claim.

---

[8] See Footnote 1, supra.
[9] See Footnote 2, supra.
[10] See Footnote 3, supra.
[11] See Footnote 4, supra.
[12] See Footnote 5, supra. Moreover, and fatal to its claims, BHR is the first "hit" under a Google internet search for "better homes" and the third "hit" under a Google internet search for 'better homes realty' and is the first "sponsored link". Nowhere on the same pages will the consumer find "San Diego Better Homes", "San Diego Better Homes Realty" and/or "sandiegobetterhomes.com".

**2. There is No Common Law Trademark Infringement As There Is No Likelihood of Confusion.**

The Second Claim is based on Lanham Act Section 43(a), which provides a cause of action for use in commerce of false designations of origin likely to cause confusion with another's goods or services. 15 U.S.C. §1125(a); *Sebastian Int'l, Inc. v. Russolio,* 186 F. Supp.2d 1055, 1069 (C.D. Cal. 2000). To state a claim, BHR must plead that: (1) its mark is valid (i.e., it is sufficiently distinctive to function as a trademark); (2) it used the mark first; and (3) there is a likelihood of confusion. *Kendall Jackson Winery v. E.J. Gallo Winery,* 150 F .3d 1042, 1046 (9th Cir. 1998). BHR cannot prevail since it cannot establish the second and third elements. By its own admission, BHR did not expand outside of Nevada until 2008[13]; at least 9 years after FLS began using its marks in 1999[14]. As to the third element, likelihood of confusion, the same reasoning applies here as it did with respect to the Section 32 claim in the prior section.

**3. BHR's California Business Tort Claims Likewise Fail**

BHR's deficient claims of trademark infringement are the basis for its state business tort claims: Unfair Competition Under California Business & Professions Code Section 17200; (4) Common Law Unfair Competition; and (5) Common Law Injury to Business Reputation. They fail as well.

**a. The Third Claim Fails To Plead A Violation Of Business & Professions Code Section 17200 et seq.**

Business and Professions Code section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. BHR's Third Claim is based on the same deficient allegations that failed to state a cause of action against the Defendants in the First and Second Claims. Complaint at ¶28. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (holding that the Ninth

---

[13] See Footnote 3, supra.
[14] See Footnote 1, supra.

Circuit has consistently held that California common law and statutory unfair competition claims are "substantially congruent" to claims for trademark infringement); *see also Meta–Film Assocs., Inc. v. MCA, Inc.,* 586 F. Supp. 1346, 1362 (C.D. Cal. 1984) (concluding that misappropriation deemed "unfair" under the Lanham Act is also "wrongful" and proscribed under § 17200). Since the First and Second Claims fail, so does the Section 17200 claim.

### b.  The Fourth Claim, For Common Law Unfair Competition, Fails For The Same Reasons BHR's Trademark Claims Fail

In Count 12, Marvel recasts its previously alleged infringement claims as unfair competition. Complaint at ¶31. As noted above California common law unfair competition claims are substantially congruent to Lanham Act claims. *See Cleary, supra.* Like the Third Claim, the Fourth Claim should also be dismissed.

### c.  The Fifth Claim Fails Once Again Because There is No Likelihood of Confusion.

The Fifth Claim, like all of the others, is based upon an alleged likelihood of confusion. Complaint at ¶34. For the same reasons expressed above, this claim also fails to state a cause of action against the Defendants.

### C.  FLS Is the Superior User in The Relevant Market and Through Its Continued Use Has Established Secondary Meaning Worthy of Protection.

A device (such as a word or a logo) can only be considered a trademark or a service mark if it is distinctive. A distinctive device is one that is capable of distinguishing the goods or services upon which it is used from the goods or services of others. The stronger the mark, the greater protection it deserves. When considering the distinctiveness of a mark or name, Courts typically place the mark into one of four categories from weakest to strongest: (1) generic marks, which function as the common descriptive name of a product class; (2) descriptive marks, which convey an immediate idea of the ingredients, qualities, or characteristics of the goods; (3) suggestive marks, which suggest a quality or ingredient of goods and require consumer imagination,

thought, or perception to determine what the product is; (4) arbitrary, which use terms that neither describe nor suggest anything about the product, and bear no logical or suggestive relation to the actual characteristics of the goods; or (5) fanciful, which is made-up, invented for the sole purpose of functioning as a trademark. The purpose of this "classification system" is to determine whether a mark is worthy of protection. *Network Automation* at 1149.

A suggestive mark is inherently distinctive, but a descriptive mark that lacks secondary meaning is not distinctive and is not entitled to trademark protection. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). All of the marks at issue in this case are clearly descriptive. However, BHR's claim of incontestability[15] does little to establish a strong mark. See *Miss World (UK), Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445 (9th Cir. 1988) *abrogated in part on other grounds by Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1116 n. 1 (9th Cir.1990). However, unlike the BHR marks, the FLS marks have acquired secondary meaning in the relevant marketplace – San Diego. When determining whether a mark has acquired secondary meaning, the Court should inquire whether "it is used in connection with a number of different products." If so, the mark is considered "weak." FLS' marks "San Diego Better Homes Realty", 'San Diego Better Homes" and "sandiegobetterhomes.com" are only used in connection with one product – real estate in San Diego.

Moreover, the search terms "better homes", "Better Homes Realty" and "better homes realty" reveal a crowded field of real estate advertisers including "Better Homes and Gardens Real Estate" and BHR; but not the FLS marks[16]. When "the marketplace is replete with products using a particular trademarked" symbol, it "indicates not only the difficulty in avoiding its use but also, and directly, the likelihood that consumers will not be confused by its use." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir.

---

[15] See Complaint at ¶10.
[16] See Request for Judicial Notice (Document # 9 through 11 inclusive) filed concurrently herewith.

2002). See also *JL Beverage Company, LLC v. Jim Beam Brands Co.*, 2016 WL 3770484 (9th Cir. 2016).

### IV. CONCLUSION

For the reasons set forth above, this Court should exercise its powers to dismiss all claims against the Defendants with prejudice as Defendants have shown as a matter of law that the Complaint cannot be saved by amendment.

Respectfully submitted,

THE ALBERTS FIRM, APC


Dated: September 9, 2016          *s/ Houston M. Watson, Esq.*
                                  Houston M. Watson, Esq.
                                  Attorneys for Defendants
                                  John Franco Watmore, Florian Antonietta
                                  Losapio, and FLS and Associates, Inc.

17

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 1901 4th Street, Santa Ana, California 92705.

On September 9, 2016, I served the foregoing document, described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS' TO DISMISS PLAINTIFF'S COMPLAINT** on all interested parties in this action as follows:

RAYMOND J. FULLERTON
STERLING E. TIPTON
GEARY, SHEA, O'DONNELL, GRATTAN & MITCHELL, P.C.
90 South E Street, Suite 300
Santa Rosa, California 95404
Telephone: 707/545-1660
Facsimile: 707/545-1876
Email: rfullerton@gearylaw.com
*Attorneys for Plaintiff Better Homes Realty, Inc.*

[X]   **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

[X]   **(FEDERAL)** I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 9, 2016 at Santa Ana, California.

Jesse Vera

18

16-cv-01607-BEN-MDD